(No. 35639.—

JAY H. SCHMIDT *et al.,* Appellants, *vs.* HERMAN LANDFIELD, Appellee.

*Opinion filed September 29, 1960.*

GEORGE B. COLLINS, of Chicago, for appellants.

JOSEPH Z. WILLNER, of Chicago, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Jay H. Schmidt and Sidney Schmidt, father and son, filed a complaint in the circuit court of Cook County against Herman Landfield, seeking damages for fraud allegedly perpetrated by defendant in certain real-estate dealings between the parties. After answer and reply were filed, the court granted a motion by defendant for judgment on the pleadings. Plaintiffs appealed to the Appellate Court, where the judgment was affirmed. (*Schmidt* v. *Landfield,* 23 Ill. App. 2d 55.) We have granted plaintiffs' petition for leave to appeal to this court.

Defendant's motion in the circuit court was made pursuant to section 45(5) of the Civil Practice Act (Ill. Rev. Stat. 1957, chap. 110, par. 45,) which provides that any party may seasonably move for judgment on the pleadings. Such a motion admits all well pleaded facts in the pleadings of the opposing party, and all fair inferences to be drawn therefrom. (*Dryz* v. *Bol,* 19 Ill. App. 2d 406.) The pleadings when so considered disclose that the defendant, a licensed attorney, had formerly represented the plaintiffs in real-estate and business transactions. He was first entrusted with legal matters by plaintiff Sidney Schmidt in 1945, and by plaintiff Jay Schmidt in 1946. The relation-

ships of attorney and client existed until some time in April, 1954.

In 1945 plaintiff Sidney Schmidt and one Sarah Goldman acquired a mortgage on certain real estate located at the intersection of Ford Street and Cermak Road, in Chicago, for the sum of $53,000. The owners of the property, who were clients of defendant, died later that same year; and Sidney Schmidt, Sarah Goldman and defendant purchased the property, defendant performing the necessary legal work in connection with the purchase. In 1948 they sold the property for a total consideration of $250,000, taking a purchase-money mortgage, in part payment, for approximately $187,000. Defendant acted as attorney for the vendors in the transaction, and also entered into a contract with Schmidt and Goldman whereby he was to act as their agent in collecting the mortgage payments, for which he was to receive a commission of 5 per cent. The plaintiff Jay Schmidt subsequently acquired a portion of Sidney's interest in the mortgage.

It further appears that the property on which the mortgage was held is improved with two buildings, the larger of which has no facilities for heating. It is entirely dependent on the smaller of the two, which contains the heating apparatus and equipment for both buildings. In 1945 the mortgagors held a long term leasehold on that part of the property which includes the larger building. The smaller building and the vacant portions of the property were held by a fee simple title. It is alleged by plaintiffs that, on numerous occasions during the years when he was their attorney, the defendant, knowing the state of the title, erroneously advised them that both of the buildings were on a leasehold, that their mortgage was entirely a mortgage on a leasehold, and that no part of the property was held by the mortgagors in fee.

At numerous times from 1946 until 1954 conferences on various matters were held between the parties hereto

and Sarah Goldman, at which defendant acted as attorney for the plaintiffs and as their partner as well. In 1954 differences arose between the plaintiffs and the defendant, and the following year they became involved in litigation, instituted by Sarah Goldman, wherein plaintiffs were represented by other counsel. In the course of that litigation a settlement was reached whereby plaintiffs received certain other property and turned over their interest in the mortgage to defendant. In this settlement the plaintiffs executed a general release of defendant and others from all claims and demands, including any which may or could arise by reason of the transactions, dealings or controversies concerning the mortgage in question. After the settlement defendant acquired the equity of the mortgagors and also purchased the leasehold, thus obtaining a fee simple title. He now proposes to sell the real estate.

Plaintiffs allege that not until some time around August, 1958, did they discover the true state of the title; that in entering into the settlement with defendant they relied on his representation that the mortgage covered only a leasehold; that had they known part of the property was held in fee they would not have relinquished their interest in the mortgage "as cheaply as they did;" that upon a sale of the property defendant will realize a profit in excess of $100,000; and that because his advice as to the title misled plaintiffs into making the settlement, they are entitled to share in such profit. Damages are prayed in the amount of $50,000.

After carefully examining the pleadings and allowing every fair inference in favor of the plaintiffs, we are of the opinion that the Appellate Court was correct in affirming the judgment. It is not alleged that there was any fraud in the execution of the release, or that plaintiffs were deceived into signing an instrument which they did not intend to execute. It is clear that they fully understood the nature of the instrument and its contents. The alleged

fraud relates to a collateral matter concerning the nature of the mortgage security, and occurred long before the settlement was made. In the interim the plaintiffs became involved in disputes with defendant and engaged other attorneys, who represented them during the litigation and settlement.

Under the circumstances in this case it is evident that no basis for relief has been alleged. There is no averment of facts which would justify a conclusion that plaintiffs relied upon defendant's advice when the settlement was made. In the first place, when the plaintiff Sidney Schmidt and Sarah Goldman acquired the original mortgage on this same property in 1945 they knew or had reason to know that part of the land was owned in fee simple, and it is not alleged the defendant at that time represented this plaintiff or advised him concerning the title. Although defendant performed legal services for the plaintiffs during succeeding years, by 1954 he had become involved in disagreements with them. Thereafter they engaged other counsel, who represented them at the time of settlement. That they relied upon their own knowledge and the explanations of the attorneys then representing them, rather than upon past representations by defendant, is indicated by the language of the release itself. It reads in part as follows: "The undersigned, and each of them, hereby jointly and severally acknowledge that they have read this release and understand each and every part thereof; that they have been represented by competent legal counsel of their own selection, who have explained each and every part thereof to each of the undersigned, and the undersigned herewith expressly acknowledge that they understand their attorneys' explanation thereof to them."

Even if it is assumed that the plaintiffs in fact relied upon the misinformation which had been previously given them by defendant, it cannot be said that such reliance was justified so as to sustain the cause of action sought to be

alleged here. As a general rule one who is guilty of fraudulent misrepresentation cannot interpose a defense that the person defrauded was negligent in failing to discover the truth. (*Roda* v. *Berko,* 401 Ill. 335.) The general rule is subject to the qualification, however, that the party seeking relief had a right to rely upon the representation made. (*Morel* v. *Masalski,* 333 Ill. 41.) This court has pointed out accordingly that "In all cases where it is sought to hold one liable for false representations, the question necessarily arises, whether, under all circumstances, the plaintiff had a right to rely upon them. In determining this question, the representations must be viewed in the light of all the facts of which the plaintiff had actual notice, and also of such as he might have availed himself by the exercise of ordinary prudence." (*Dillman* v. *Nadlehoffer,* 119 Ill. 567, 577.) The rule is well established that a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge; and if he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations. See *Johnson* v. *Fulkerson,* 12 Ill.2d 69, 75; *Bundesen* v. *Lewis,* 368 Ill. 623; *Dickinson* v. *Dickinson,* 305 Ill. 521, 527-528; *Malnick* v. *Rosenthal,* 313 Ill. App. 249.

This rule is clearly applicable to the facts alleged in this case. Plaintiffs had ample opportunity to know the true state of the title, if they were not actually aware of it. They had dealt with this particular real estate, both as mortgagees and as owners, over a long period of time; they were involved in lengthy litigation during which a settlement was reached on the advice of their own counsel; and they delivered to defendant a formal release from every claim and demand of any kind arising out of their real-estate and mortgage transactions. Under these circumstances

they were charged with knowledge of the state of the title to the real estate, and were not justified in relying on any statement defendant might have made with reference thereto during past years. Since they were involved in disputes with defendant at the time of settlement, and were no longer advised or represented by him, it became their duty to investigate anything which might affect the value of their interest in the mortgage. The information concerning the title was readily available, the plaintiffs were represented by counsel of their own choice, and in the settlement they were dealing at arm's length with defendant.

We conclude that on the facts averred in the complaint and reply, plaintiffs have failed to show they were justified in relying on the alleged representation; and that judgment on the pleadings was properly entered for defendant. The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*